UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TROY G. HAMMER,

        Plaintiff,

        v.                                 Case No. 19-C-216

TODD HAMILTON, et al.,

        Defendants.

**ORDER**

Before the court is Defendants' motion for summary judgment on exhaustion grounds and Plaintiff Troy Hammer's motion for an extension of time and his motion to continue the *Pavey* hearing and stay discovery. For the reasons explained below, the court will grant Defendants' motion and deny Hammer's motions.

**FACTUAL BACKGROUND**

The misconduct alleged in this case occurred on June 8, 2016. ECF No. 60 at ¶ 1. Hammer signed an inmate complaint concerning the alleged misconduct on July 4, 2016; the inmate complaint examiner received the inmate complaint on July 6, 2016. *Id.* at ¶¶ 2-4. Hammer was on clinical observation status from June 8-16, 2016, and from June 20-22, 2016. ECF No. 30 at 8. While on clinical observation, Hammer did not have access to a writing utensil. He was not on clinical observation for any part of June 17-19, 2016, and June 23-July 6, 2016. ECF No. 60 at ¶ 6. When Hammer was not on clinical observation, he had a no-sharps restriction in place (for some or all of the time; the record is unclear). When inmates are on a no-sharps restriction, they may use a crayon, but not a pen.

Hammer filed his inmate complaint twenty-six days after the alleged misconduct occurred. ECF No. 60 at ¶ 8. However, given that Hammer did not have access to a writing utensil while on clinical observation, the inmate complaint examiner counted only those days during which Hammer spent no part of the day on clinical observation. *Id.* at ¶ 9. Counting only those days, Hammer filed his inmate complaint fifteen days after the alleged misconduct. Accordingly, on July 6, 2016, the inmate complaint examiner rejected Hammer's inmate complaint because he submitted it outside the fourteen-day limit allowed under Wis. Admin. Code § DOC 310.09(6).[1] ECF No. 32-2 at 2.

Hammer knew his inmate complaint was late. Seeking to take advantage of the "good cause" exception to the fourteen-day limit, he explained that his inmate complaint was "late because [he] was placed on a 'no-sharps' restriction which prevented [him] from having a pen to properly and legibly file [his] complaint." ECF No. 32-2 at 8. The inmate complaint examiner rejected Hammer's explanation, later explaining that, "Inmates that are on a no sharp restriction still have access to forms and a writing utensil." *Id.* at 6.

Hammer requested a review of the inmate complaint examiner's rejection. ECF No. 32-2 at 12. He explained that because he "was unable to possess a pen" he could not "'legibly' file [his] complaint in the allowed time limit." *Id.* He asserted that "the only writing utensil [he] was able to use was a crayon. And it is extremely hard to 'effectively' and 'legibly' file a complaint using a crayon to write with." *Id.*

In their summary judgment motion, Defendants argued that Hammer's fear that his inmate complaint would be rejected for being illegible if he wrote it in crayon does not excuse his failure

---

[1] Wis. Admin. Code references are to the December 2014 version, which was in effect at the time of the incident.

to timely submit an inmate complaint because there is no futility exception to the exhaustion requirement. ECF No. 30 at 7 (relying on *Perez v. Wisconsin Dept. Of Corrections*, 182 F.3d 532, 536-37 (7th Cir. 1999). They asserted that, because Hammer could have used a crayon to timely submit his inmate complaint, he cannot show that the administrative remedies were unavailable to him.

Hammer disputed Defendants' interpretation of his statement that "the only writing utensil [he] was able to use was a crayon." According to Hammer, that statement was not an admission that he had a crayon. ECF No. 39 at 13. Hammer explained that he was "just stating that due to the 'no sharps' restriction, the only writing utensil he was able to use – would have been a crayon," which would have prevented him from legibly preparing an inmate complaint. *Id.* Hammer clarified that he did not have a crayon during the time he was on a no-sharps restriction. He detailed his consistent efforts to obtain a crayon during the relevant time period and asserted that his requests for a crayon were either refused or ignored. ECF No. 41 at 3-7. Hammer stated that, as soon as he was removed from a no-sharps restriction, he requested an inmate complaint form and a pen insert, which he was promptly given. *Id.* at 7. That was on July 4, 2016, one day after Hammer's opportunity to file an inmate complaint expired. *See* ECF No. 30 at 8.

On August 23, 2019, the court explained that:

The issue boils down to whether Hammer had access to a crayon during the fourteen days he had to file an inmate complaint. If Hammer *did* have access to a crayon, he cannot demonstrate good cause for failing to timely submit his inmate complaint, and the court must grant Defendants' motion for summary judgment. If Hammer did *not* have access to a crayon because staff repeatedly refused to give him one, the administrative remedies were unavailable to him, and the court must deny Defendants' motion. . . .

ECF No. 51 at 5.

3

Acknowledging that questions of fact existed as to whether Hammer had access to a crayon and/or pen while he was on a no-sharps restriction, the court found that an evidentiary hearing was necessary before it could resolve Defendants' motion for summary judgment. *Id.* On November 26, 2019, the parties appeared before the court. Witnesses for Defendants included Alan DeGroot (the inmate complaint examiner who had rejected Hammer's inmate complaint), Lt. Drew Weycker, and Correctional Officer Peter Walton. Lt. Weycker and CO Walton both were correctional officers at the time of the incident and have known Hammer for years. Hammer also testified and had an opportunity to cross-examine Defendants' witnesses.

DeGroot testified that, based on the date of the alleged misconduct, Hammer's inmate complaint was late. Although not required by any rule to do so, DeGroot had excluded from his calculation any day that Hammer had been on clinical observation. He did so because, while on clinical observation, Hammer would not have had access to a writing utensil. However, once off clinical observation, Hammer would have had access to either a crayon (if on a no-sharps restriction) or a pen (if not on a no-sharps restriction). DeGroot explained that, if Hammer did not automatically receive his property after being released from clinical observation, he could have requested that a correctional officer give him a pen and/or crayon. DeGroot also believed that inmates in the restricted housing unit could request pens, crayons, and inmate complaint forms from the unit supplies cart.

DeGroot acknowledged that it can be difficult to write with a crayon; however, he noted that he regularly accepts inmate complaints written with a crayon or rubber pencil. He explained that, if he is unable to read an inmate complaint, he returns the inmate complaint to the inmate, asks them to write the complaint legibly, and gives them additional time to do so.

Next, Lt. Weycker testified. He explained that he was a correctional officer in 2016 in the restricted housing unit. He has known Hammer since 2013. Lt. Weycker explained that, when an inmate is on a no-sharps restriction, they cannot have anything made of plastic or metal, including pens, but they can possess forms and crayons. Lt. Weycker testified that Hammer's statements that he had denied him a crayon upon request are untrue. Lt. Weycker acknowledged that there could be delays in responding to inmates' requests, but he testified that, if Hammer requested something to write with, he would have given it to him. He explained that Hammer could be difficult, and if he asked for something and did not get it, he would cause a disruption until he got it. In addition, when testifying on rebuttal, Lt. Weycker stated that Hammer was known as a liar. He would hide contraband, threaten self-harm to manipulate staff, and lie to get his way.

Finally, CO Walton testified. He also knew Hammer during the time of the incident. CO Walton testified that Hammer's statements that he had lent him a pen for the limited purpose of completing a form were untrue. CO Walton testified that he never lends his pen to inmates. He explained that it is against the rules and, if he did, he would never get his pen back. He stated that, if an inmate does not have a pen to complete a form, he will sign on the inmate's behalf.

Hammer then testified. He explained that he has a long history of self-harm and suicide attempts. He stated that he mostly cuts himself; he said it is easy to hide razor blades and smuggle them in to segregation. Hammer testified that, once he was off clinical observation, he asked for forms and crayons, but everyone ignored him. He explained that he was supposed to be off the sharps-restriction on July 7 but got off early on July 4. He explained that he immediately received his property and wrote the inmate complaint in pen.

With the court's permission, Hammer filed a supplemental evidentiary brief and supporting exhibits on January 2, 2020. That same day, Defendants' filed proposed findings of fact.

**ANALYSIS**

As indicated above, the issue before the court is whether Hammer's statements that he did not have anything to write with prior to July 4 are credible. When Hammer challenged the rejection of his inmate complaint, he stated that, because he "was unable to possess a pen" he could not "'legibly' file [his] complaint in the allowed time limit." ECF No. 32-2 at 12. He also stated that, "the only writing utensil [he] was able to use was a crayon. And it is extremely hard to 'effectively' and 'legibly' file a complaint using a crayon to write with." *Id.* In responding to Defendants' motion, Hammer tried to explain these statements away by arguing that he did not mean he actually *had* a crayon; he meant only that the only writing utensil he *could have had* was a crayon.

After observing the witnesses and hearing their testimony, the court finds that Hammer's explanation is not credible. Lt. Weycker testified that Hammer is known to be a liar, and even Hammer conceded that he has lied to correctional officers in the past (he clarified that he was not lying about this complaint). Hammer further undermined his credibility by explaining how he easily sneaks contraband into segregation. Lt. Weycker testified that Hammer often manipulates officers and causes disruptions if he does not get what he wants. Both Lt. Weycker and CO Walton stated that the statements Hammer included in his declarations about them denying him a crayon and/or lending him a pen for limited use only were untrue. All this testimony supports a conclusion that Hammer will intentionally break rules, lie, and act out in order to get what he wants. In short, Hammer is not believable.

The court finds that Hammer meant exactly what the statements in his inmate complaint and in his challenge to the rejection of his inmate complaint indicate. Hammer had a crayon, but he chose not to write his inmate complaint in crayon because he feared he could not do so legibly. As Defendants highlight, Hammer's fear that his inmate complaint would be rejected for being illegible if he wrote it in crayon does not excuse his failure to timely submit an inmate complaint because there is no futility exception to the exhaustion requirement. ECF No. 30 at 7 (relying on *Perez v. Wisconsin Dept. Of Corrections*, 182 F.3d 532, 536-37 (7th Cir. 1999) ("No one can know whether administrative requests will be futile; the only way to find out is to try. . . . What's the harm in waiting to see how the administrative process turns out? . . . There is no futility exception to § 1997e(a).")). Because Hammer could have used a crayon to timely submit his inmate complaint, he cannot show that the administrative remedies were unavailable to him. Accordingly, the court will grant Defendants' motion for summary judgment on the ground that Hammer failed to exhaust the available administrative remedies before he filed his lawsuit.

## HAMMER'S MOTIONS

On December 16, 2019, Hammer filed a "Motion for an Order and Extension of Court Set Deadline." ECF No. 58. That same day, the clerk's office mailed a letter to Hammer informing him that his filing was not legible. ECF No. 59. The clerk's office informed Hammer that, if he wished the court to consider his document, he had to provide a legible copy by December 30, 2019. Hammer did not file a legible copy, so the court will deny his motion.

On January 2, 2019, Hammer filed a "Motion for Continuance and Motion for an Order." ECF No. 61. Hammer raises four issues that he believes the court should consider in evaluating Defendants' motion for summary judgment. He asks the court to reopen discovery and allow argument on the four proposed issues. Hammer's motion is untimely. Defendants filed their

motion for summary judgment eight months ago, and the motion has been fully briefed for nearly five months. Hammer offers no explanation for why he delayed so long in raising these issues. It is now too late. The court will deny his motion.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (ECF No. 29) is **GRANTED**.

**IT IS FURTHER ORDERED** that Hammer's motion for order and motion for extension of court set deadline (ECF No. 58) is **DENIED**.

**IT IS FURTHER ORDERED** that Hammer's motion to continue *Pavey* hearing and motion for order reopening discovery (ECF No. 61) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED without prejudice** based on Hammer's failure to exhaust the available administrative remedies.

Dated at Green Bay, Wisconsin this 8th day of January, 2020.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court

This order and the judgment to follow are final. The plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If the plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If the plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.